MOUNTAIN STATES LEGAL FOUNDATION and the Blue Ribbon Coalition, Inc., Appellants,

v.

George W. BUSH, in his official capacity as President of the United States of America, et al., Appellees.

No. 01–5421.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 3, 2002.

Decided Oct. 18, 2002.

S. Amanda Koehler argued the cause for appellants. With her on the briefs was William Perry Pendley.

Susan Pacholski, Attorney, U.S. Department of Justice, argued the cause for appellee George W. Bush. With her on the brief were Ellen Durkee, Michael Gheleta and Ann D. Navaro, Attorneys.

James S. Angell argued the cause for appellees Wilderness Society, et al. With him on the brief was Johanna Wald.

Before: EDWARDS and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Mountain States Legal Foundation and the Blue Ribbon Coalition (hereafter "Mountain States") appeal the dismissal of their complaint challenging six Presidential Proclamations as unconstitutional and *ultra vires* actions for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mountain States contends that the district court erred by limiting its review to the face of the Proclamations rather than conducting factfinding to determine whether the President had complied with the limitations, structure, and purposes of the Antiquities Act ("the Act"), 16 U.S.C. § 431 (2000). Absent such judicial review, it contends, the Act constitutes an unconstitutional delegation of congressional authority. Mountain States maintains that its complaint stated a claim because the Proclamations reach far beyond the purpose, scope, and size of any national monuments contemplated by Congress under the Act and are contrary to various statutes relating to the protection of environmental values on federal land. We have no occasion to decide the availability or scope of judicial review of a Presidential Proclamation designating federal lands as a national monument under the Antiquities Act, for Mountain States has failed to present any factual allegation sufficient to warrant review of its *ultra vires* claim. Accordingly, we affirm the dismissal of the complaint.

## I.

Near the end of his second term in office, President Clinton exercised his authority under the Antiquities Act to issue a series of Presidential Proclamations designating a handful of national monuments in the western United States. Among these designations are the six Proclamations that Mountain States challenged in its complaint: (1) the Grand Canyon–Parashant National Monument, a "geological treasure" that encompasses an important watershed for the Colorado River and the Grand Canyon in northwest Arizona, Proclamation No. 7265, 65 Fed. Reg. 2825, 2825–26 (Jan. 18, 2000); (2) the Canyons of the Ancients National Monument in southwest Colorado, a "rugged landscape" containing "the highest known density of archaeological sites in the Nation," Proclamation No. 7317, 65 Fed. Reg. 37,243 (June 13, 2000); (3) the Cascade–Siskiyou National Monument, a "biological crossroads" in southwestern Oregon where the Cascade Range intersects with adjacent ecoregions, Proclamation No. 7318, 65 Fed. Reg. 37,249 (June 13, 2000); (4) the Hanford Reach National Monument, a habitat in southern Washington that is the largest remnant of the shrub-steppe ecosystem that once dominated the Columbia River basin, Proclamation No. 7319, 65 Fed. Reg. 37,253 (June 13, 2000); (5) the Ironwood Forest National Monument, an arid terrain in southern Arizona marked

by rock art sites and other archaeological objects of scientific interest, Proclamation No. 7320, 65 Fed. Reg. 37,259 (June 13, 2000); and (6) the Sonoran Desert National Monument, a desert ecosystem containing an array of biological, scientific, and historic resources, Proclamation No. 7397, 66 Fed. Reg. 7354 (Jan. 22, 2001).

Mountain States alleged in its complaint that the President acted unconstitutionally and *ultra vires* under the Property Clause, U.S. Const., art. IV, § 3, cl. 2, in issuing these Proclamations. In the district court Mountain States argued that the President lacked the authority to designate the monuments because the Property Clause confers on Congress all powers relating to federal land. The focus of its argument shifted, however, when the government invoked the Antiquities Act in its motion to dismiss the complaint under Rule 12(b)(1) and (b)(6). The government argued that because the President had issued the Proclamations under the Antiquities Act, judicial review was limited to whether the President exercised his discretion in accordance with the standards in the Act, and that review of the face of the Proclamations sufficed to dispose of Mountain States' arguments. Mountain States responded that factfinding was required to ensure that the President had acted within the scope of his statutory authority, and in particular that the court should review, in light of the statutory standards, the basis on which the President acted. According to Mountain States, Congress intended only to preserve ruins, artifacts, and other manmade objects situated on public lands—not the land itself—by the smallest possible reservation of public land necessary for protection of the monument.

The district court dismissed the complaint, ruling that the Property Clause was not at issue and that under the Antiquities Act only facial review of Mountain States' arguments was appropriate. Upon facial review, the court concluded that the President had referenced the relevant statutory standards and had not acted *ultra vires*.

## II.

On appeal, Mountain States contends that, in light of the presumption of judicial reviewability of executive action, substantive review was required to ensure that substantial evidence existed to support the President's issuance of the Proclamations. Arguing that the Proclamations' nature, size, and scope facially contravene Congress's limited purpose, which was to preserve rare and discrete man-made objects, such as prehistoric ruins and ancient artifacts, Mountain States further contends that the Presidential actions violate other statutes governing the withdrawal of land from public use and the protection of environmental values on federal land. Hence, Mountain States maintains, the district court erred in dismissing its complaint based only on facial review of the Proclamations.

Our review of the grant of a motion to dismiss is *de novo*. *Wilson v. Pena*, 79 F.3d 154, 160 n. 1 (D.C.Cir.1996). In ruling on a motion to dismiss a complaint the district court must draw all reasonable inferences in favor of the plaintiff, *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 374 (D.C.Cir.1995), and must not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Despite Federal Rule of Civil Procedure 8's simplified notice pleading standard, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). With this standard in mind, we turn to Mountain States' contentions.

## A.

The Antiquities Act provides, in relevant part:

> The President of the United States is authorized, in his discretion, to declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated upon lands owned or controlled by the Government of the United States to be national monuments, and may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected....

16 U.S.C. § 431. Presidential Proclamations designating national monuments have been challenged in only a handful of cases; in each the court has upheld the President's action.[1] The Supreme Court has considered the Antiquities Act in three cases, each time confirming the broad power delegated to the President under the Act. *United States v. California*, 436 U.S. 32, 98 S.Ct. 1662, 56 L.Ed.2d 94 (1978); *Cappaert v. United States*, 426 U.S. 128, 141–42, 96 S.Ct. 2062, 2071, 48 L.Ed.2d 523 (1976); *Cameron v. United States*, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920).

Although the Supreme Court has never expressly discussed the scope of judicial review under the Antiquities Act, the Court has directly addressed the nature of review of discretionary Presidential decisionmaking under other statutes. The Court has highlighted the separation of powers concerns that inhere in such circumstances and has cautioned that these concerns bar review for abuse of discretion altogether. *United States v. George S. Bush & Co.*, for example, involved § 336(c) of the Tariff Act of 1930, which provided that the President:

> shall by proclamation approve rates of duties and changes in classification and in basis of value specified in any report of the [Tariff] [C]ommission ... if *in his judgment* such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

310 U.S. 371, 376–77, 60 S.Ct. 944, 944–45, 84 L.Ed. 1259 (1940) (quoting 19 U.S.C. § 1336(a)) (emphasis added). The statute provided for judicial review only of legal questions. The Court held that "[t]he President's method of solving the problem [of foreign exchange value] was open to scrutiny neither by the Court of Customs and Patent Appeals nor by us." *Id.* at 379, 60 S.Ct. at 946. Similarly, in *Dalton v. Specter*, the Court considered a statute—the Defense Base Closure and Realignment Act of 1990—that did "not at all limit the President's discretion...." 511 U.S. 462, 476, 114 S.Ct. 1719, 1728, 128 L.Ed.2d 497 (1994). Judicial review was unavailable under the Administrative Procedures Act ("APA") because the President is not an "agency" within the meaning of that statute. *Id.* at 469–70, 114 S.Ct. at 1724–

---

1. *See Anaconda Copper Co. v. Andrus*, 14 Env't Rep. Cas. (BNA) 1853, 1855 (D.Alaska July 1, 1980) (President Carter's creation of monuments in Alaska); *Wyoming v. Franke*, 58 F.Supp. 890, 896 (D.Wyo.1945) (President Franklin Delano Roosevelt's designation of the Jackson Hole National Monument); *cf.*

*Alaska v. Carter*, 462 F.Supp. 1155, 1159–60 (D.Alaska 1978) (holding that President is not subject to environmental impact statement requirements when proclaiming monuments under the Antiquities Act). See also *Tulare County v. Bush*, 306 F.3d at 1138 (D.C.Cir. 2002), also decided today.

25 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800–01, 112 S.Ct. 2767, 2775–76, 120 L.Ed.2d 636 (1992)). The Court then "assume[d] for the sake of argument that some claims that the President has violated a statutory mandate are judicially reviewable outside the framework of the APA," *id.* at 474, 114 S.Ct. at 1727 (citation omitted), but it reiterated that "such review is not available when the statute commits the decision to the discretion of the President." *Id.* The Court held, "[h]ow the President chooses to exercise the discretion Congress has granted him is not a matter for our review." *Id.* at 476, 114 S.Ct. at 1726.

A somewhat different case is presented, however, where the authorizing statute or another statute places discernible limits on the President's discretion. Judicial review in such instances does not implicate separation of powers concerns to the same degree as where the statute did "not at all limit" the discretion of the President. *Id.* at 476, 114 S.Ct. at 1726; *cf. California*, 436 U.S. at 33, 98 S.Ct. at 1662–63. As this court observed in *Chamber of Commerce v. Reich*, "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." 74 F.3d 1322, 1331 (D.C.Cir.1996) (footnote omitted). "*Dalton* is inapposite," the court explained, "where the claim instead is that the presidential action ... independently violates" another statute. *Id.* at 1332. The court rejected the government's position "that the Procurement Act grants the President such broad discretion ... that the case reduces only to a claim that the President abused his discretion—a claim that [the court is] not authorized to entertain." *Id.* at 1326. It would be "untenable," the court stated, "to conclude that there are no judicially enforceable limita-

tions on presidential actions, besides actions that run afoul of the Constitution or which contravene direct statutory prohibitions, so long as the President *claims* that he is acting pursuant to" a statutory directive. *Id.* at 1332. Rather, the court emphasized that "'[t]he responsibility of determining the limits of statutory grants of authority ... is a judicial function entrusted to the courts by Congress....'" *Id.* at 1327 (quoting *Stark v. Wickard*, 321 U.S. 288, 310, 64 S.Ct. 559, 571, 88 L.Ed. 733 (1944)). The court then held that the President had exceeded his authority under the Procurement Act in issuing an Executive Order barring federal contractors from hiring replacement workers during an economic strike because the Order was preempted by an independent statute, the National Labor Relations Act. *Id.* at 1339.

Although the limits on Presidential authority at issue derive from the Antiquities Act itself rather than an independent statute, *Reich* is instructive, for the same policy considerations apply. Courts remain obligated to determine whether statutory restrictions have been violated. In reviewing challenges under the Antiquities Act, the Supreme Court has indicated generally that review is available to ensure that the Proclamations are consistent with constitutional principles and that the President has not exceeded his statutory authority. *United States v. California*, 436 U.S. at 35–36, 98 S.Ct. at 1663–64; *Cappaert*, 426 U.S. at 141–42, 96 S.Ct. at 2071; *Cameron*, 252 U.S. at 455–56, 40 S.Ct. at 410–11.

The instant case, however, presents no occasion for the court to engage in *ultra vires* review of the Proclamations because Mountain States fails to allege any facts sufficient to support its *ultra vires* claim. Mountain States alleges in its complaint merely that the six Proclamations at issue exceed the President's authority un-

der the Property Clause and are therefore "unconstitutional and *ultra vires*." Compl. ¶¶84–104. No constitutional Property Clause claim is before us, as the President exercised his delegated powers under the Antiquities Act, and that statute includes intelligible principles to guide the President's actions. *See Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 474, 121 S.Ct. 903, 913, 149 L.Ed.2d 1 (2000); *Dalton*, 511 U.S. at 473–74 & n. 6, 114 S.Ct. at 1726–27 & n. 6. In responding to the government's reliance on the Antiquities Act, Mountain States argued in the district court that the President had included ineligible items within the designation—namely land—whereas the legislative history of the Act indicated, Mountain States asserted, that Congress intended only that rare and discrete man-made objects, such as prehistoric ruins and ancient artifacts, were to be designated. That argument fails as a matter of law in light of Supreme Court precedent interpreting the Act to authorize the President to designate the Grand Canyon and similar sites as national monuments. *See, e.g., Cameron*, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659. And to the extent that Mountain States seeks *ultra vires* review under the Act, its complaint and statutory arguments present no more than legal conclusions. At no point has Mountain States presented factual allegations that would occasion further review of the President's actions. Rather, Mountain States' arguments contain only the bald assertion that the President acted outside the bounds of his constitutional and statutory authority. Although in reviewing the dismissal of a complaint the court, as it must, takes "all the factual allegations in the complaint as true," the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986) (citation omitted). Moreover, the court is necessarily sensitive to pleading requirements where, as here, it is asked to review the President's actions under a statute that confers very broad discretion on the President and separation of powers concerns are presented. *Dalton*, 511 U.S. at 474–76, 114 S.Ct. at 1727–28; *Bush*, 310 U.S. at 380, 60 S.Ct. at 946–47.

Nothing in the record before us indicates any infirmity in the challenged Proclamations. Each Proclamation identifies particular objects or sites of historic or scientific interest and recites grounds for the designation that comport with the Act's policies and requirements. For example, Proclamation 7320, 65 Fed. Reg. at 37,259, states that the Ironwood Forest National Monument "holds abundant rock art sites and other archeological objects of scientific interest." And Proclamation 7317, 65 Fed. Reg. at 37,244, states that the 164,000 acres that comprise the Canyons of the Ancients National Monument "is the smallest area compatible with the proper care and management of the objects to be protected."

To warrant further review of the President's actions, Mountain States would have to allege facts to support the claim that the President acted beyond his authority under the Antiquities Act. *See* Fed.R.Civ.P. 8(a); *Papasan*, 478 U.S. at 286, 106 S.Ct. at 2944–45; *Browning v. Clinton*, 292 F.3d 235 (D.C.Cir.2002). Having failed to do this, Mountain States presents the court with no occasion to decide the ultimate question of the availability or scope of review for exceeding statutory authority. The inadequacy of Mountain States' assertions thus precludes it from showing that the district court erred in declining to engage in a factual inquiry to ensure that the President has complied with the statutory standards. Even assuming the correctness of Mountain States' contention that *AFL–CIO v. Kahn*, 618 F.2d 784 (D.C.Cir.1979), and *Franke*, 58 F.Supp.

890, require a detailed factual review in some circumstances, those cases are not relevant in view of the inadequacy of Mountain States' allegations.

### B.

Mountain States further contends, much as did appellants in *Reich*, that the Proclamations facially defy congressional intent regarding the scope and purpose of "a host" of other statutes enacted to protect various archeological and environmental values. Appellants' Br. at 5. This contention, however, misconceives federal laws as not providing overlapping sources of protection. Essentially, this contention parallels Mountain States' view of the limited scope of power delegated to the President under the Antiquities Act, specifically as not embracing environmental values.

According to Mountain States, the Endangered Species Act, 16 U.S.C. §§ 1532–44 (2000), is the "sole means" for protecting species and their habitat, and § 1133 of the Wilderness Act, 16 U.S.C. §§ 1131–36 (2000), is the "sole means" by which the federal government may withdraw land from public use to protect scenic beauty, natural wonders, or wilderness values. Appellant's Br. at 36, 37. Yet the Park Service Organic Act, 16 U.S.C. §§ 1–4 (2000), provides just one example of a statute that serves both purposes. *United States v. Brown*, 552 F.2d 817, 822 (8th Cir.1977). So, too, the Migratory Bird Treaty Act, 16 U.S.C. §§ 703–12 (2000), the National Wildlife Refuge System Act, 16 U.S.C. § 668dd (2000), the National Forest Management Act of 1976, Pub.L. No. 94–588, 90 Stat. 2949 (codified as amended in scattered sections of 16 U.S.C.) (2000), and the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668 (2000), all guard endangered species and their habitat. The Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701, the National Forest Management Act, and the Multiple Use Sus-

tained Yield Act, 16 U.S.C. §§ 528–29, 531 (2000), also protect scenic and wilderness values. Consequently, Mountain States' contention that the Antiquities Act must be narrowly construed in accord with Mountain States' view of Congress's original intent because Congress asserted its Property Clause authority in enacting the FLPMA again misses the mark.

Accordingly, we affirm the dismissal of the complaint.